5th case United States v. Marcus Ford Appeal No. 21-1398 Mr. Schultz May it please the Court, Counsel for the Government, Todd Schultz, Assistant Federal Public Defender representing the Defendant Appellant. The District Court in this case erred in applying two guideline enhancements. Those enhancements are for possessing a firearm and maintaining a drug premises. I'd like to begin my argument by addressing the enhancement for possession of a firearm pursuant to 2D1.1b1. Determining whether that enhancement is properly applied is a two-step process. First, the Court must find by preponderance of the evidence that the Defendant possessed the firearm. And if it makes such a finding, then the enhancement is to apply unless it is clearly improbable that the firearm was connected with the offense. And applying the enhancement in this case, the District Court did not apply that standard. Instead, it found that if the firearm was present and that it was not clearly improbable that the Defendant possessed it in connection with the offense, but did not first find by a preponderance of the evidence, as it is required to, that the Defendant, in fact, possessed the firearm. Essentially, what I believe the District Court did is it skipped over 2D1.1b1, whether the Defendant possessed the firearm, and jumped right to the application note 11a, explaining the guideline provision and simply asked itself whether it was clearly improbable that the weapon was connected with the offense. Had the District Court applied the correct preponderance of the evidence standard, the record, however, would not have supported application of the enhancement. And that is because the record fails to establish that Defendant constructively possessed the firearm. The District Court never specifically addressed this all-important issue of constructive possession. It simply concluded, based on the firearm's proximity to items belonging to the Defendant, his driver's license, an identification card, some mail addressed to him, and a prescription, and the contraband, which was found in a safe, that the proximity of his personal items and the gun to the safe containing the drugs and drug proceeds, that a preponderance of the evidence established the firearm was present and that it was not clearly improbable that the firearm was possessed in connection with the offense. And that is not the standard for applying this enhancement. At the outset, I'd like to note that I think that there is a real temporal problem to the application of this enhancement. What I mean by that is there's no evidence indicating when it is that the firearm actually came to be in the location that it was found. There is evidence that Defendant used the room where the firearm was found for drug sales. But the evidence before the court was that this is an individual, the Defendant, who had not been known to possess a firearm. And the last documented sale from the residence was some 18 days prior to the execution of the search warrant. So I think there's no evidence in the record which would indicate that the firearm was actually physically present at the time the Defendant made the final sale or the last documented sale from that bedroom. With respect to... Mr. Schultz, you represented Mr. Ford at sentencing, correct? Yes, sir, I did. Okay, so can I offer you a view, a slightly different view of what transpired at the sentencing? Because I totally understand your argument. You've been very clear about it. And I want you to tell me why what I'm about to say I'm mistaken on. I'll do my best, Your Honor. I'm sure you will. Okay. So as I read the transcript, you framed up at sentencing right in the beginning that really the real question here is whether Ford possessed the firearm. So now I'm not talking about pages 14 and 15 where all the actions going down that you're focused on. Talking about the pages that precede that. So the whole guideline enhancement around the gun was all framed around possession. And there's a few different places where that happens. Then when you get to appendix page 15 or sentencing transcript page 14, what the district judge is doing is going through the various items that were found in that rear bedroom. And there's an itemization of it. You know what it is, the safe, etc. Okay. And then and only then she finds that there's enough for the enhancement to apply. Now you're right. You're right to focus on the use of the language from note 11, the clearly improbable. But I just think it is implicit in here, given the way that everything was framed at sentencing, that what's occurring on sentencing page 15 is first a finding that the defendant possessed the gun, just like he possessed the safe and the drugs, you know, or the money, etc. And drugs. And from there that it's improbable that anybody else possessed it. Why is that reading mistaken? Your Honor, well, certainly the judge never explicitly addresses the issue of constructive possession. And so to me, I think a fairer reading, I think what what is more apparent in looking at it is the court spends almost its entire analysis addressing connected with the offense. And so I agree with you that it's a fair reading that maybe it was just so obvious that the court didn't need to address the issue of constructive possession. But I think what's more obvious from the record in this case is that it didn't. It spent its time looking at the facts that you've recited and saying how those facts supported that it was not improbable that the gun was connected with the offense. It didn't use those facts to say, and that is why he you know, that's why there's sufficient facts to conclude that. In fact, he constructively possessed his firearm because it was found in a room where he admittedly kept a safe that had drugs and drug proceeds. And there were some personal items in it. The other evidence, evidence which I believe strongly suggests that, in fact, he did not constructively possess it was not in any way addressed by the court in its analysis. Significantly, Your Honor, much of this case revolves around purchases made by a C.S. from defendant that C.S. had known defendant for 10 years and never once seen him with a firearm. Never once has it said that during any of the sales conducted by defendant that he possessed a firearm. And so I think based upon that, given the length of which this C.S. is known defendant, the defendant, the evidence for the court is not someone who possesses a firearm. In addition, this is a home where he does not live. He does not have exclusive control over that bedroom. And while, yes, there are items belonging to him found in there, there's a lot of items that don't belong to him. It's not suggested that any of the clothes in that bedroom belong to him. It's not suggested that would appear to be two flat screen TVs in that bedroom belong to him. There also appears to be an Xbox near the where the gun is located. And none of the items belonging to the defendant appear in the photo of the firearm. So what you have is you have a room with a bunch of different stuff in it, belonging to different people in a room where others had access to you. The other evidence before the court was that coded that my client's co-defendants brother lived there, sold drugs out of that same bedroom and was there the night before the gun was recovered. And so I think the question before the court, which was never addressed, is does a preponderance of the evidence suggest that my client, as opposed to two or three of the other people who actually lived there, does a preponderance of the evidence suggest that my client, who's never been seen with a firearm, that that was his firearm? And we know that there was another person dealing drugs out of that same bedroom. That is evident from the record before the court. And so I don't see any way in which the record can be reviewed to say that it is more likely that my client possessed that firearm than it is that the co-defendant's brother, Martez Nicholson, did because according to the co-defendant's boyfriend, Jamal Brown, it was Martez who used the back bedroom, it was Martez who lived in the back bedroom. And so on these facts, we feel not only did the court not address the issue, but had it, the guideline clearly would not have applied. I see I'm out of time. Thank you, Mr. Schultz. Ms. Gross for the United States. Good morning and may it please the court, Assistant United States Attorney Zoe Gross on behalf of the United States. The evidence before the court today shows that the district court did not clearly err when it used the correct standards to apply the firearm enhancement and the enhancement for maintaining the drug premises. First, the district court correctly determined by preponderance of the evidence that the defendant possessed the firearm in question that was connected to his drug trafficking activity. Judge Scudder, as you pointed out, if you if you take the sentencing transcript as a whole and don't take this individual statement by the court out of context and look on page nine, where I believe you did. It is clear that the district court had acknowledged the defendant's arguments relating to his possession of the firearm and the requirement that the defendant possess the gun in order for the enhancement to apply. We do believe it's clear that the district court knew what the correct standard was and applied that in reaching its conclusion. I also want to address quickly something that the defendant has raised an argument, and I'm sure he'll point me out if I'm incorrect, but I don't believe that the confidential source said that he had never seen the defendant possess a firearm in his 10 years of knowing him. He just didn't say that he had seen him possessing a gun, and I don't think that we can infer from the lack of a conversation with a confidential source about his possession of a firearm that that means that he never saw him possess a gun in the 10 years that he knew him. And I also don't think that we can infer that just because the confidential source didn't mention it, that he he didn't have one. The evidence showed that the defendant was connected to the bedroom and that there was a substantial connection to that room and the district court reviewed that evidence in making its determination. So the government does believe that the district court correctly applied the first enhancement. And the government also believes that the evidence shows that the district court correctly determined that the defendant exercised sufficient control over the rear bedroom of the house for the primary purpose of packaging, storing and selling his drugs to apply to apply the enhancement for maintaining a drug premises. And now, for all the reasons that we stated in our brief, the government asked the court to affirm the application of both of the sentencing enhancements by the district court. So unless the court has any questions for me, the government will rest. Ms. Gross, I do have a question. The actual sentence imposed in this case was well below the guideline range as calculated with these enhancements. Did the judge give any indication about the importance of these two enhancements to her ultimate decision in the case? As you know, that just Hamilton, yes, the sentence was was below the guideline range, but she did not indicate that she would have reached the same sentence either way. So we have not argued for harmless error in this case because of that. The it's it's a problem that recurs often when we are parsing the fine details of advisory guidelines when a judge, particularly when a judge has chosen to do something quite different in the ultimate sentence. So I agree that in the absence, though, of some indication from the district court, it can't be treated as harmless. Thank you. Can I ask one more question, please? Ms. Gross, I have one question. It's just it's a small point I was trying to figure out from the record. There's plenty of information about what was in that rear bedroom or back bedroom, and that's all laid out. But there's not a lot of information more specifically about what was in the closet separate and apart from the gun. Have I missed something or can you point me to somewhere in the record that describes with particularity what else was in the closet? Unfortunately, I can't. I don't believe that there's much description other than the photographs that were submitted along with the report that they do show the gun as well as the Xbox that was in the closet. But it's kind of hard to discern from the recording and the photographs what else may have been in the closet. Yeah, that's what I'm going to. OK, thank you. Thank you. Thank you very much. Ms. Gross, if you're done. Mr. Schultz, your time has expired, but if you need a moment for rebuttal, you're welcome to it. No, that's not necessary. I appreciate the court taking time. I just ask that the court would vacate the district court sentence and remand for resentencing without these enhancements. All right. Thanks to both counsel. The case is taken under advisement.